IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TODD FRANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-448 (RDA/WEF) |
| ) | |
| JASON BERNSTEIN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on two motions: (i) the Motion to Vacate or Modify Arbitration Award filed by Plaintiff Todd France (Dkt. 6); and (ii) the Motion to Transfer Case to the Middle District of Pennsylvania filed by Defendant Jason Bernstein (Dkt. 21). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with the Complaint (Dkt. 1), Memoranda in Support of each respective Motion (Dkts. 7, 22), the Oppositions (Dkts. 35, 37), and Replies (Dkts. 36, 43), the Court GRANTS the Motion to Transfer and DEFERS the Motion to Vacate for consideration by the Middle District of Pennsylvania for the reasons that follow.[1]

I. BACKGROUND

This case does not represent these parties' first dispute before this Court. *See France v. Bernstein*, No. 1:20-cv-479-RDA-MSN (E.D. Va.) (*"France I"*). Accordingly, this Court draws

---

[1] There is also an outstanding motion for electronic device application (Dkt. 44) that will be denied as moot as the Court did not conduct a hearing in this matter.

the relevant background pertaining to this case from the prior proceedings before the Court as well as the briefs related to the currently pending motions.

As this Court has previously noted, Plaintiff and Defendant are both National Football League Players Association ("NFLPA") certified contract advisors. *France I*, Dkt. 39 at 3, filed August 13, 2020. Agents such as Plaintiff and Defendant represent National Football League ("NFL") players in connection with procuring playing contracts with NFL teams and related matters. *Id.*

In July 2019, Defendant accused Plaintiff of improperly and/or tortiously interfering with Defendant's Standard Representation Agreement (the "SRA" – a standard form contract issued by the NFLPA to be used between agents and players) and Endorsement and Marketing Agreement (the "EMA") between Defendant and Kenny Golladay (the "Player") who was then a wide receiver with the Detroit Lions. *Id.* at 4. Specifically, Defendant accused Plaintiff of "poaching" the Player in violation of NFLPA regulations. *Id.* Defendant asserted that Plaintiff convinced the Player to attend a lucrative event and that, thereafter, the Player orally terminated his SRA and EMA with Defendant and entered into similar agreements with Plaintiff and Plaintiff's agency, CAA Sports. *Id.*

The NFLPA Regulations Governing Contract Advisors required that the dispute between Plaintiff and Defendant be brought to and decided by an NFLPA-appointed Arbitrator. *Id.* On July 1, 2019, Defendant initiated NFLPA arbitration by filing a grievance against Plaintiff with the NFLPA. *Id.* On July 19, 2019, Plaintiff answered. *Id.* On August 2, 2019, the NFLPA appointed Roger P. Kaplan, Esq., as the Arbitrator for the dispute, and the arbitration was conducted in Alexandria, Virginia. *Id.* On March 27, 2020, at the conclusion of the proceedings, the Arbitrator issued a written Opinion and Award in favor of Plaintiff and against Defendant. *Id.*

Plaintiff then filed a Petition for Confirmation of Arbitration Award in this Court. *Id.* at 5. Defendant also sought to transfer that case to the Middle District of Pennsylvania. *Id.* at 14. On August 13, 2020, this Court determined that granting the motion to transfer was appropriate given that "the Middle District of Pennsylvania is already intimately familiar with the facts that gave rise to Respondent's grievance against Petitioner." *Id.* at 20. This decision was based in part on the existence of litigation in the Middle District of Pennsylvania by Clarity Sports International LLC, an entity owned by Defendant, brought against three sports memorabilia companies that worked with Plaintiff on matters related to the Player's attendance at the same signing event that gave rise to Defendant's initial grievance. *See id.* at 17 (citing *Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 167-68 (M.D. Pa. 2019)) (the "*Clarity* Action"). Accordingly, this Court transferred the case to the Middle District of Pennsylvania. *Id.* at 22.

Thereafter, the Middle District of Pennsylvania confirmed the arbitration award in favor of Plaintiff before that decision was vacated by the Third Circuit. *France v. Bernstein*, 43 F.4th 367 (3d Cir. 2022). Ultimately, the Third Circuit determined that "the arbitration award was procured by France's fraud" and instructed the district court to vacate the award. *Id.* at 370.

On February 3, 2023, the district court applied the mandate from the Third Circuit and vacated the arbitration award in Plaintiff's favor. Dkt. 1 ¶ 101. On March 20, 2023, Defendant filed a second amended grievance against Plaintiff with the NFLPA. *Id.* ¶ 102. In April 2023, the Arbitrator notified the parties that hearings would be held in October 2023 at his offices in Alexandria, Virginia. *Id.* ¶ 108. Thereafter, the Arbitrator, on his own motion, asked the parties to brief whether collateral estoppel – based on the Third Circuit's decision – precluded the Arbitrator from considering some of the same issues. *Id.* ¶ 109.

3

On September 28, 2023, the Arbitrator issued a pre-hearing Order on Collateral Estoppel finding that "the binding effect of the Appeals Court's clear holding, *the issues of liability are final and will not be litigated again.*" *Id.* ¶ 116 (emphasis in original). On October 16, 2023, a hearing was held only as to the issue of Defendant's economic damages. *Id.* ¶ 122. After the hearing closed, the Arbitrator indicated for the first time that he would consider the issue of punitive damages and solicited briefing on the issue. *Id.* ¶ 136.

On December 28, 2023, the Arbitrator issued his Award. *Id.* ¶ 146.

On March 21, 2024, Plaintiff filed this action to Vacate or Modify the Award. Dkt. 1. The case was originally assigned to U.S. District Judge Leonie M. Brinkema. On March 25, 2024, Plaintiff filed his Motion to Vacate. Dkt. 6. Plaintiff filed an affidavit indicating that Defendant was served via posting on Saturday, March 30, 2024, and that service was also delivered to Defendant's prior counsel on March 29, 2024. Dkts. 14; 15.

On April 5, 2024, counsel entered an appearance on behalf of Defendant and filed: (i) an emergency motion to stay; and (ii) the pending motion to transfer. Dkts. 18-23. That same day the case was reassigned to this District Judge. The emergency motion was granted in part and denied in part, in that certain deadlines were extended but the case itself was not stayed. Dkt. 24.

On April 16, 2024, Plaintiff sought entry of default against Defendant. Dkt. 32. The next day, Defendant filed a response to the request as well as an Answer to the Complaint. Dkts. 33, 34. On April 19, 2024, Plaintiff filed an Opposition to the Motion to Transfer. Dkt. 35. On April 25, 2024, Defendant filed a Reply in support of the Motion to Transfer. Dkt. 36. On April 29, 2024, Defendant filed an Opposition to the Motion to Vacate. Dkt. 37. Finally, on May 6, 2024, Defendant filed a Reply in support of the Motion to Vacate. Dkt. 43.

4

## II. LEGAL STANDARD

### A. Motions to Transfer Venue

Transfer of venue is governed by 28 U.S.C. § 1404 which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Accordingly, there is a two-part inquiry when considering whether to transfer venue, "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Trend Micro Inc. v. Open Text, Inc.*, 2023 WL 6446333, at *5 (E.D. Va. Sept. 29, 2023) (internal citations omitted). The party seeking transfer generally "bears the burden of proving 'that the circumstances of the case are *strongly* in favor of transfer.'" *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (citation omitted, italics in original). However, "the ultimate decision [of whether to transfer a case] is committed to the sound discretion of the district court." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011); *see also In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

### B. The Federal Arbitration Act

Section 9 of the Federal Arbitration Act ("FAA") authorizes parties to an arbitration to apply for an order confirming an arbitral award within one year of the award's entry if the parties "in their agreement have agreed that a judgment of the court shall be entered upon the award." 9 U.S.C. § 9. Under those circumstances, the Court "must grant" confirmation "unless the award is vacated, modified, or corrected." *Id.* An award may only be vacated or modified for the grounds listed in FAA Sections 10 and 11. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581

(2008). "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.* at 583.

FAA Section 9 does not grant statutory subject matter jurisdiction, meaning the Court must have some "independent jurisdictional basis" to review an application to confirm an arbitral award. *See Badgerow v. Walters*, 596 U.S. 1, 4, 8-11 (2022).

III. ANALYSIS

As in *France I*, Defendant seeks to transfer this case to the Middle District of Pennsylvania. Plaintiff, on the other hand, argues that this case stands differently from *France I* and that intervening case law suggests that the case should not be transferred. The Court will discuss each argument in turn.

A. *Badgerow* and *Smartsky*

Plaintiff first argues that the Supreme Court's decision in *Badgerow v. Walters*, 596 U.S. 1 (2022), and the Fourth Circuit's decision in *Smartsky Networks, LLC v. DAG Wireless, Ltd.*, 93 F.4th 175 (4th Cir. 2024), "sever any purported jurisdictional (or venue) connection between this Second Vacatur Action and the *Clarity* Action of the MDPA [sic]." Dkt. 35 at 4. Thus, the Court begins with an examination of those decisions.

In *Badgerow*, the Supreme Court recognized that to act on a motion under the FAA, the federal court "must have what we have called an 'independent jurisdictional basis' to resolve the matter." 596 U.S. at 4. The Supreme Court noted that in addressing motions to compel arbitration, it had previously permitted federal courts to "look through" the petition to the "underlying substantive controversy" between the parties, even though that controversy was not before the court. *Id.* In *Badgerow*, the Supreme Court determined that the same "look-through" approach does not apply to requests to confirm or vacate arbitral awards. *Id.* at 5. In so holding, the Supreme

6

Court reiterated that "[a] federal court may entertain an action brought under the FAA only if the action has an 'independent jurisdictional basis' . . . apart from Section 10 itself." *Id.* at 8.

The Fourth Circuit's *Smartsky* decision followed *Badgerow* and involved an appeal of a district court order confirming an arbitral award. *Smartsky*, 93 F.4th at 179. In *Smartsky*, the Fourth Circuit held that, "[a]t the time that [the parties] filed their respective Section 9 and 10 applications, they were no longer litigating over their fraught business relationship," and that neither the motion to confirm nor the motion to vacate filed in the case relied on a federal law outside of Section 9 and 10 of the FAA. *Id.* at 182. Thus, the Fourth Circuit held that there was no "subject matter jurisdiction to confirm the arbitration award." *Id.* at 187.

It is rather curious for Plaintiff to raise *Badgerow* and *Smartsky*, because Plaintiff is the one who sought a federal forum and thus bears the burden to establish subject matter jurisdiction. In any event, there is no question that subject matter jurisdiction exists here. It is undisputed that there is diversity jurisdiction because: (1) Plaintiff is a citizen of Georgia; (2) Defendant is a citizen of Maryland; and (3) the Award sought to be vacated is for $810,846.47. Dkt. 1 ¶¶ 9-10; Dkt. 1-1 at 31.[2] Thus, the Court clearly has subject matter jurisdiction over this dispute.[3]

---

[2] Because it is clear that there is diversity jurisdiction in this case, the Court need not address the question of whether Plaintiff has plausibly asserted a claim under the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"), sufficient to confer federal question jurisdiction.

[3] Notably, the Middle District of Pennsylvania would also have subject matter jurisdiction based on diversity. In the case cited by Plaintiff, the Western District of Missouri found that, in light of *Badgerow*, certain claims in a class action could not have been brought in the Southern District of New York because "the Southern District of New York does not have an independent basis for federal question jurisdiction." *Hursh v. DST Sys., Inc.*, 666 F. Supp. 3d 947, 970 (W.D. Mo. 2023). That court recognized that, in light of *Badgerow*, the fact that mirror claims under ERISA existed in the Southern District of New York could not confer supplemental jurisdiction over the motions to confirm arbitration awards. *Id.* That concern is not present here, because in this case diversity jurisdiction would exist in almost any federal district court and certainly would exist in the Middle District of Pennsylvania.

Rather than attacking his own right to a federal forum, Plaintiff's clear intent in citing *Badgerow* and *Smartsky* is to extend those holdings to this Court's analysis of personal jurisdiction with respect to the Motion to Transfer. The Court sees no basis to do so. Both decisions are explicit that they address a federal court's obligation to ensure that it has subject-matter jurisdiction and do not address personal jurisdiction at all. Following the Supreme Court's decision in *Badgerow*, one Court of Appeals has addressed Plaintiff's suggested extension of that decision to the analysis of personal jurisdiction. *See Conti 11 Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co.*, 91 F.4th 789 (5th Cir. 2024). In *Conti*, the Fifth Circuit reached the same conclusion that this Court reaches here: "*Badgerow* addressed subject matter jurisdiction, not personal jurisdiction." *Conti*, 91 F.4th at 796; *id.* at 799 ("*Badgerow* was not even addressing personal jurisdiction."). Other courts have also reached the same conclusion. *See Newby v. Treyled Life Settlements LLC*, 2024 WL 5186712, at *11 (E.D. Cal. Dec. 20, 2024) (declining to extend *Badgerow* to limit personal jurisdiction).

Plaintiff also argues that *Badgerow* and *Smartsky* limit this Court's analysis of venue. But, if Plaintiff were correct and venue were based only on a complaint or petition seeking to confirm or vacate an arbitral award, then venue would only be appropriate in the jurisdiction in which the arbitration occurred. But, in another decision by the Supreme Court, the Supreme Court recognized the "liberalizing effect" of the FAA's venue provisions. *Cortez Byrd Chips v. Bill Harbert Constr. Co.*, 529 U.S. 193, 200 (2000). Indeed, the Supreme Court in *Cortez* in referring to venue, and in stark contrast to the Supreme Court's language in *Badgerow* with respect to subject matter jurisdiction, repeatedly referred to the venue provisions of the FAA as "liberalizing" and encouraging "[f]lexibility to make practical choices." *Id.* at 200-01. Importantly, the Fourth Circuit in *Smartsky*, used the Supreme Court's discussion of venue in *Cortez* to draw a distinction

between the analysis for venue as opposed to subject matter jurisdiction. 93 F.4th at 185. Thus, far from supporting Plaintiff's interpretation of *Badgerow*, the *Smartsky* case distinguished between the analysis performed in *Cortez* for venue and *Badgerow* for subject matter jurisdiction. *Id.* Thus, the Supreme Court's decision in *Cortez* and its application of a "liberalizing" rule of venue for FAA actions remain good law, as the *Badgerow* case neither explicitly nor implicitly overruled the decision reached there. As one of the only cases to discuss the interaction between *Badgerow* and venue noted: "*Badgerow* may have altered whether parties are entitled to bring suit in federal court, but *Badgerow* concerns subject matter jurisdiction, which cannot be agreed upon, not venue." *Hursh v. DST Sys., Inc.*, 666 F. Supp. 3d 947, 973 n.16 (W.D. Mo. Mar. 31, 2023).

Having thus determined that the *Badgerow* and *Smartsky* decisions do not alter the Court's analysis of the Motion to Transfer, the Court will turn to the factors to be considered pursuant to that Motion now.

B. Personal Jurisdiction

At the outset, the Court must determine whether the proposed transferee forum of the Middle District of Pennsylvania is one in which this action might have originally been brought. Thus, this threshold inquiry involves a consideration of personal jurisdiction. As the Fourth Circuit has held a district court may only assert personal jurisdiction over a nonresident defendant where: (i) "the exercise of jurisdiction must be authorized by the long-arm statute of the forum state" and (ii) "the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

Notably, personal jurisdiction concerns whether there are sufficient contacts with a forum *by a defendant*. This Court has already held that there is personal jurisdiction over Defendant in

9

the Middle District of Pennsylvania. *See France I*, Dkt. 39 at 16-17. The district court in the Middle District of Pennsylvania also determined that there is a nexus between the underlying dispute between the parties and Pennsylvania. *See Clarity*, 400 F. Supp. 3d 161 (M.D. Pa. 2019) (denying defendants' motions to dismiss and asserting personal jurisdiction over out-of-state defendant). Moreover, Defendant is *seeking* to have the case transferred to the Middle District of Pennsylvania. It is thus peculiar for Plaintiff to argue that the "MDPA would not have personal jurisdiction over Bernstein." Dkt. 35 at 15. As the Supreme Court has noted "personal jurisdiction is a waivable right." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). Thus, by seeking to transfer the case to the Middle District of Pennsylvania, Defendant has waived personal jurisdiction there. *See, e.g., Liaw Su Teng v. Skaarup Shipping Corp.*, 1985 WL 1920 (S.D.N.Y.) ("By its motion to transfer . . . [defendant] has conceded that the Southern District of New York is a place where the actions could be commenced . . . [t]hus we view [defendant's] actions as a waiver of personal jurisdiction"). Furthermore, by affirmatively arguing to this Court that "the MDPA could have asserted personal jurisdiction over Bernstein in litigation arising from this dispute," Defendant would be estopped from making any contrary argument to the Middle District of Pennsylvania. Dkt. 36 at 7. Accordingly, consistent with this Court's decision in *France I*, there is personal jurisdiction over Defendant in the Middle District of Pennsylvania.

## C.  Venue

The next step in the Section 1404(a) inquiry is to determine whether venue would have been proper in the Middle District of Pennsylvania. A petitioner may file a motion for confirmation of an arbitration award in the district where the arbitration took place under Section 9 of the FAA, as Petitioner did here, or in any district allowed by the general venue statute, 28

U.S.C. § 1391. *See U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 935 (E.D. Va. 2005).

28 U.S.C. § 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Importantly, "[a] [petitioner] is not required to establish that his chosen venue has the most substantial contacts to the dispute." *Power Paragon v. Precision Technology USA*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008) (citing *Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 177 (D. Conn. 2003)). "Rather, it is sufficient that a substantial part of the events occurred in that venue, even if a greater part of the events occurred elsewhere." *Id.*

Again, this Court already determined that venue was appropriate in the Middle District of Pennsylvania in deciding *France I*, which addressed a different arbitral award but the same underlying grievance. *France I*, Dkt. 39 at 17-18. Moreover, as district judges in this District have recognized, when analyzing venue, "a court should focus not only on the matters that are in dispute or that directly led to the filing of the action; instead, it should review 'the entire sequence of events underlying the claim." *Power Paragon v. Precision Technology USA*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). Conducting such an analysis here only confirms that venue is appropriate in the Middle District of Pennsylvania. The memorabilia dealers involved in the transactions that gave rise to the original grievance and to the *Clarity* Action are in Pennsylvania. *Clarity*, 400 F. Supp. 3d at 165-66. Moreover, Plaintiff's arguments here are, in part, based on the Arbitrator's treatment of the decisions from the Middle District of Pennsylvania and the Third Circuit and the "liability" determinations made in those courts. *See* Dkt. 1 at 33-34 (arguing that the Arbitrator was fundamentally unfair because "it was not possible for France to have a fundamentally fair hearing

11

on remand considering the demonstrably incomplete factual record presented to the Third Circuit"). The arguments regarding the merits of this dispute will largely focus on what evidence did the Middle District of Pennsylvania and Third Circuit have and what did those courts decide. Thus, Plaintiff's argument that no part "of the events or omissions giving rise to *his* vacatur claim took place in Pennsylvania" is simply not accurate. Dkt. 35 at 18. The Complaint here: (i) refers to Pennsylvania four times; (ii) specifically refers to the *Clarity* Action; (iii) makes *twenty-nine* references to the "parallel action"; and (iv) makes *forty-one* references to the Third Circuit or the Third Circuit Opinion. Accordingly, this Court again finds that venue is appropriate in the Middle District of Pennsylvania.

    D.    Plaintiff's Choice of Forum, Convenience, and the Interest of Justice

The parties next discuss the remaining portions of the transfer analysis. In *France I*, this Court found that Plaintiff's choice of forum was entitled to "some weight" given that the arbitration was conducted in Alexandria, Virginia, but that the weight to be given was less than "substantial" because this District is not Plaintiff's home forum. *France I*, Dkt. 39 at 18-19.[4] But a Plaintiff's choice of forum is entitled to little weight where it is apparent that a Plaintiff is engaging in forum-shopping. *See Newman v. Direct Energy, LP*, 2023 WL 2914788, at *3 (D. Md. Apr. 12, 2023)

---

[4] In discussing *France I*, Plaintiff again cites the *Hursh* decision. Dkt. 35 at 19. But Plaintiff miscites *Hursh*. In the parenthetical for his citation to *Hursh*, Plaintiff purports to quote that decision and asserts that the case stands for: "distinguishing and rejecting 1404(a) transfer decisions in the FAA arbitration context from other courts that 'were decided before *Badgerow*, which has altered the [transfer] analysis.'" *Id.* But Plaintiff's addition of the word "transfer" to the quotation is misleading. In reality, the *Hursh* Court was talking about *supplemental jurisdiction* – which has an impact on subject matter jurisdiction – and was not referring to the transfer analysis at all. Plaintiff's addition of the word "transfer" to the quote is therefore inappropriate and distorting. Indeed, the entire quote from *Hursh* is as follows: "DST directs the Court to several cases in which courts have exercised supplemental jurisdiction over confirmation proceedings. However, those cases were decided before *Baderow*, which has altered the analysis." *Hursh*, 666 F. Supp. 3d at 971. Plaintiff's counsel is advised to be cautious when adding language to quotations that change the meaning of the decision cited.

(recognizing that, where counsel representing the same party seek to file in a different district after receiving an unfavorable ruling, a court "can reasonably draw an inference that Plaintiff's counsel are engaged in forum shopping" which undermines the weight given to plaintiff's choice of forum). Here, this action involves the same parties and the same basic dispute (a dispute about the force of an arbitral award arising out of the same grievance). Yet, not only did Plaintiff file this new action in this District after this Court had already transferred the related *France I* action to the Middle District of Pennsylvania, but Plaintiff did not even mark the *France I* action as a related action when he filed the Complaint. Dkt. 1-26. Thus, it appears that Plaintiff not only sought to avoid the Middle District of Pennsylvania but sought to avoid having this case be assigned to this District Judge by failing to mark it as a related case. And, indeed, Plaintiff was partially successful, as the case was originally assigned to Judge Brinkema. Plaintiff's Opposition to the Motion to Transfer is even more explicit about his forum shopping. Plaintiff is explicit that he has filed in this District to avoid Third Circuit law regarding the vacatur of punitive damages awards. Dkt. 35 at 26 (arguing transfer would "subject France to prejudice resulting from a possible difference in applicable Fourth Circuit and Third Circuit law concerning the vacatur of punitive damages").[5] Thus, this Court finds that Plaintiff's choice of forum is entitled to even less weight than in *France I*.

The factors concerning witnesses, evidence, and convenience of the parties also weigh in favor of transfer. Plaintiff's contention that Pennsylvania "has no connection to the arbitration awards before this Court" is simply not true. Dkt. 35 at 20. Indeed, Plaintiff's argument is belied by the allegations in his Complaint, which: (i) refers to Pennsylvania four times; (ii) specifically

---

[5] Plaintiff concedes, as he must, that where state law is applicable to his claims the transferee court is required to apply the state law or Circuit law required by the transferor forum. *See* Dkt. 35 at 26.

13

refers to the *Clarity* Action; (iii) makes *twenty-nine* references to the "parallel action"; and (iv) makes *forty-one* references to the Third Circuit or the Third Circuit Opinion. Indeed, the evidence on which Plaintiff seeks to rely, and which Plaintiff argues was not considered in the arbitration is evidence *taken* in the *Clarity* Action. Plaintiff asserts that the Arbitrator should have considered "thousands of pages of new deposition testimony from fact and expert witnesses" as well as "ongoing discovery in the parallel action" which "yielded plenty of additional documentary evidence, including phone records, flight records, expense reports, etc." Dkt. 1 ¶ 93. All of that evidence was produced in the Middle District of Pennsylvania. To be sure, the evidence that the Arbitrator did consider also came from the *Clarity* Action in the Middle District of Pennsylvania. *Id.* ¶ 132 (alleging "the parties were permitted to introduce various exhibits, including depositions taken in the parallel action"). Moreover, Plaintiff's claims of error by the Arbitrator specifically focus on the collateral effect given to the Third Circuit's decision on the appeal of *France I* and the fact that the Third Circuit's decision "was based on a materially incomplete evidentiary record in the parallel action." *Id.* ¶ 194. More specifically, Count 5 of the Complaint is premised on the two Middle District of Pennsylvania proceedings (*France I* and the *Clarity* Action), because it argues that the Arbitrator erred by relying on a "evidentiary record before the Third Circuit [that] was incomplete and not as comprehensive as the evolving factual record in the ongoing parallel action." Dkt. 1 ¶ 236. Thus, a reviewing court determining whether to vacate or confirm the arbitral award would necessarily need to review the record before the Middle District of Pennsylvania in *France I*, which resulted in the Third Circuit's decision, and the record in the

*Clarity* Action. The Middle District of Pennsylvania is better positioned to conduct this review of matters appearing on its own docket.[6]

Despite his reliance on evidence produced in the Middle District of Pennsylvania actions, Plaintiff argues that the evidence in this case is "already in the possession of both parties and their attorneys." Dkt. 35 at 20-21. But it is apparent to the Court that discovery in the *Clarity* Action was fraught and subject to extensive fights regarding protective orders and confidentiality. *See, generally, Clarity* Action, docket, No. 18-cv-305 (M.D. Pa.). It makes no sense for this Court to retread those disputes, when the Middle District of Pennsylvania is already well familiar with them. It is not clear to the Court that the evidence produced in the *Clarity* Action or *France I*, after it was transferred to the Middle District of Pennsylvania, could be produced in this action without further litigation by the parties. To the extent that Plaintiff asserts a need for discovery from the Arbitrator, the Court notes that "discovery in post-arbitration review proceedings is typically limited, or not necessary at all." *Wichard v. Suggs*, 95 F. Supp. 3d 935, 948 (E.D. Va. 2015). Moreover, courts recognize "the well-established rule that arbitrators may not be deposed absent 'clear evidence of impropriety'" and "cases are legion" that arbitrators may not be deposed "regarding the thought processes underlying their decisions." *Hoeft v. MVL Grp., LLC*, 343 F.3d 57, 67 (2d Cir. 2003). Thus, although this Court does not prejudge any potential request for discovery,[7] the Court notes that the ordinary principles of discovery applicable to cases concerning

---

[6] Although it may be true that ordinarily "the locus of operative facts is the site of the arbitration," this case presents an unusual set of circumstances where Plaintiff's specific claims and the evidence to which he refers – and which he argues was inappropriately precluded from the arbitration – are in Pennsylvania. Thus, this case is distinguishable from the cases that Plaintiff cites. *See Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*, 2022 WL 2872767, at *4 (D. Minn. July 21, 2022).

[7] In this District, such requests are ordinarily handled by the assigned Magistrate Judge.

15

arbitral awards suggest that any such discovery would be limited and, with respect to the Arbitrator (who is the only witness alleged to reside in Virginia), very limited.

In sum, the reasons to transfer this action to the Middle District of Pennsylvania are even more compelling now than they were at the time this Court transferred the case in *France I*. The Middle District of Pennsylvania is intimately familiar with the facts that gave rise to the underlying grievance here, with the developments and evidence in the *Clarity* Action, and with the proceedings before the Third Circuit. Far from being divorced from the proceedings in *France I* or the *Clarity* Action, Plaintiff's claims are intimately married to and reliant on the evidence developed in and the holdings resulting from those proceedings. It is apparent that Plaintiff filed this action in this District primarily to avoid the Third Circuit's findings in the appeal from *France I* and that Plaintiff failed to mark this case as related in order to avoid having the Motion to Transfer decided by this District Judge. These tactical maneuvers will not do, and the Middle District of Pennsylvania is better positioned to address evidence produced in proceedings taking place there and the meaning of decisions reached by the Third Circuit in proceedings arising out of that District. Accordingly, the interests of justice support transferring this case to the Middle District of Pennsylvania and the Motion to Transfer will be granted.[8]

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Transfer (Dkt. 21) is GRANTED; and it is

---

[8] In a cursory footnote, Plaintiff requests that, should the Court grant the motion to transfer, the transfer be stayed so that Plaintiff may apply for a certificate of appealability. Dkt. 35 at 30 n.6. This footnote is not a motion to stay and does not provide any basis on which the Court could rely to support staying the transfer of this case. At this time, the Court sees no basis on which to grant any stay.

FURTHER ORDERED that this case is TRANSFERRED to the Middle District of Pennsylvania and the Court notes for the benefit of the Middle District of Pennsylvania Clerk of Court that this matter is related to two cases presided over by U.S. District Judge Yvette Kane (Civil No. 1:19-cv-305 and Civil No. 1:20-cv-1443); and it is

FURTHER ORDERED that the Motion for Electronic Device Application (Dkt. 44) is DENIED as moot; and it is

FURTHER ORDERED that the Motion to Vacate or Modify Arbitration Award (Dkt. 6) is DEFERRED for consideration by the Middle District of Pennsylvania.

IT IS SO ORDERED.

Alexandria, Virginia
January 30, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge